UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
DAVID SANTIAGO,

                     Movant,

    -against-

UNITED STATES OF AMERICA,

                     Respondent.

------------------------------------------------------------x

16-cv-5405 (ALC)
13-cr-811 (ALC)

**OPINION AND ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

David Santiago ("Santiago" or "Petitioner") petitions this Court to correct, vacate, or set aside his conviction pursuant to 28 U.S.C. § 2255. Though Santiago initially filed this petition pro se, raising a number of issues related to his conviction and sentence, he has since been assigned counsel and withdrawn all but one of those arguments. His remaining contention is that his attorney was ineffective for failing to research and argue at sentencing that one of his convictions for criminal sale of marijuana was sufficiently similar to an enumerated misdemeanor or petty offense, thus warranting a reduction of his criminal history category. Santiago seeks resentencing. For the reasons explained herein, Santiago's petition is **DENIED**.

## BACKGROUND

The following factual summary is derived substantially from the Government's response to the Petition.

Santiago was charged for his participation in a burglary ring that was responsible for breaking into and stealing controlled substances from at least 125 pharmacies in Manhattan, the

Bronx, Queens, and Brooklyn. Indictment, 13-cr-0811, ECF No. 2;[1] see Pre-Sentence Report ("PSR") at ¶¶ 9-11. Santiago participated in at least 10 of these burglaries in Brooklyn and Queens during February 2012 through October 2012 alone. PSR ¶¶ 12-22.

On November 20, 2014, Santiago executed a plea agreement (the "Plea Agreement"), which contained the terms under which Santiago agreed to plead guilty to Counts One and Two of a two-count superseding information, S5 13 Cr. 811 (ALC) (the "Superseding Information"). See Plea Agreement, 13-cr-00811, ECF No. 453, Ex. A. Count One of the Superseding Information charged Santiago with participating in a conspiracy to burglarize pharmacies with the intent to steal controlled substances (18 U.S.C. § 2118(d)), and Count Two charged Santiago with burglary of a pharmacy with the intent to steal controlled substances (18 U.S.C. § 2118(b) and 2). In the Plea Agreement, the parties stipulated that his Guidelines offense level was 27 and that he had 10 criminal history points, placing him in Criminal History Category V. Id. at 3-4. This resulted in a stipulated sentencing range of 120 to 150 months' imprisonment. Id. at 4.

On November 21, 2014, Santiago appeared with his counsel, Lee A. Ginsberg, Esq., and pleaded guilty Counts One and Two of the Superseding Information, pursuant to the Plea Agreement. See Plea Transcript, 13-cr-00811, ECF No. 453, Ex. B. Before sentencing, the Probation Office issued the Presentence Report, also reflecting a total offense level of 27, Criminal History Category of V, and a Guidelines range of 120 to 150 months' imprisonment, consistent with the Plea Agreement. PSR ¶¶ 41-52, 53-60.

Santiago's sentencing hearing was held on March 31, 2015. See Sentencing Transcript, 13-cr-00811, ECF No. 453, Ex. C. At the proceeding, Santiago's counsel, the Government, and Santiago himself each had a full opportunity to be heard before sentence was imposed. Id.

---

[1] Some documents related to this Motion are docketed under the criminal case number (13-cr-00811) and others are docketed under the civil case number (16-cv-05405). Citations to the docket are distinguished here by case number.

2

Santiago did not dispute either the factual information or the Guidelines calculations contained in the Presentence Report. Id. at 2-3. Defense counsel mentioned that a 10-year-old misdemeanor conviction was "appropriately counted for purposes of the criminal history," but that he planned to raise issues with it under 18 U.S.C. § 3553(a). Id. at 3; see Letter dated Mar. 27, 2015, 13-cr-00811, ECF No. 224 (specifically addressing 2004 criminal sale conviction and how it was overstated).

In a lengthy colloquy with defense counsel, the Court raised concerns it had with defense counsel's arguments regarding Santiago's positive treatment history as it relates to specific deterrence. Id. at 25-35. More specifically, the Court identified that the "real problem" was not what Santiago did while incarcerated, but "what he does when he's out"—specifically referring to drug-related arrests such as his 2004 conviction for criminal sale of marijuana. Id. at 26. The Court noted that these repeated arrests for the same conduct "belies this whole notion that that old conviction [for the 2004 criminal sale] sort of overstates the seriousness of his criminal record." Id. After hearing further arguments from the parties, Santiago was sentenced to 128 months' imprisonment, within the stipulated guidelines range, and three years' supervised release (to run concurrently with a two-year term of supervised release), with a mandatory $200 special assessment. Id. at 41-46.

On or about June 23, 2016, while in custody, Santiago timely filed the instant petition pursuant to 28 U.S.C. § 2255. Pet. at 1, 16-cv-05405, ECF No. 1; see 28 U.S.C. § 2255(f)(1)(f) (providing that petition must be filed within the "1-year period of limitation" that begins to run "from the date on which the judgment of conviction becomes final" or "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence"). Santiago initially raised three grounds for relief. After counsel was

appointed to represent Santiago for the purposes of this petition (Order Appointing Counsel, 16-cv-05405, ECF No. 18), the parties filed supplemental briefing focusing on one of the three issues that Santiago had initially raised. Santiago subsequently withdrew his other claims. See Letter dated Apr. 27, 2018, 16-cv-05405, ECF No. 28; Letter dated Sept. 5, 2018, 16-cv-05405, ECF No. 31. This decision addressing the remaining issue now follows.

## LEGAL STANDARD

### A. 28 U.S.C. § 2255

Section 2255 allows a person convicted in federal court to "move the court which imposed the sentence to vacate, set aside or correct the sentence" on the grounds that it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . ." 28 U.S.C. § 2255(a). Under section 2255, a court may grant relief "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995)) (internal quotation marks omitted).

When considering a section 2255 motion, a district court must hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. . . ." 28 U.S.C. § 2255(b). "However, the filing of a motion pursuant to § 2255 does not automatically entitle the movant to a hearing; that section does not imply that there must be a hearing where the allegations are 'vague, conclusory, or palpably incredible.'" Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting Machibroda v. United States, 368 U.S.

4

487, 495 (1962)). "To warrant a hearing, the motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the movant] to relief." Id. at 131. If it "plainly appears" from the motion, exhibits, and record of prior proceedings that the habeas petitioner is not entitled to relief, "the judge must dismiss the motion." Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 28 U.S.C. foll. § 2255.

**B. Ineffective Assistance of Counsel**

In order to prevail on an ineffective assistance of counsel claim, the movant must demonstrate that (1) his counsel's performance "fell below an objective standard of reasonableness" and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688-694 (1984). "At the second step of analysis, a petitioner cannot show prejudice if the claim or objection that an attorney failed to pursue lacks merit." Harrington v. United States, 689 F.3d 124, 130 (2d Cir. 2012). Counsel is granted "wide latitude" and there is a "strong presumption that [a lawyer's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. As the Second Circuit has noted, "[t]he Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard." Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001).

**DISCUSSION**

Santiago contends that his attorney was constitutionally deficient because he failed to investigate and raise a Guidelines-related argument with respect to his prior conviction for criminal sale of marijuana, specifically that it was sufficiently similar to an enumerated offense, thus warranting exclusion from his criminal history points, and resentencing under a modified

5

Guidelines range. The Court disagrees, concluding that Santiago has failed to rebut the presumption that his attorney's representation fell below the bar for reasonable, professional assistance, as well as failed to demonstrate that, but for the errors of which he complains, the proceedings would have been different. At bottom, the argument that Santiago claims should have been raised at sentencing is without merit.

Chapter Four, Part A of the United States Sentencing Guidelines explains the procedure for calculating a defendant's criminal history score. While Section 4A1.1, among other things, assigns points for prior convictions based on the length of the sentence imposed, Section 4A1.2(c) operates to exclude certain offenses and those "similar" to them from a defendant's criminal history score.[2] More specifically, under subsection 4A1.2(c)(1), a prior misdemeanor or

---

[2] This section reads as follows:
    (c) Sentences Counted and Excluded
    Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted, except as follows:
        (1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:
            Careless or reckless driving
            Contempt of court
            Disorderly conduct or disturbing the peace
            Driving without a license or with a revoked or suspended license
            False information to a police officer
            Gambling
            Hindering or failure to obey a police officer
            Insufficient funds check
            Leaving the scene of an accident
            Non-support
            Prostitution
            Resisting arrest
            Trespassing.
        (2) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:
            Fish and game violations
            Hitchhiking
            Juvenile status offenses and truancy
            Local ordinance violations (except those violations that are also violations under state criminal law)
            Loitering
            Minor traffic infractions (e.g., speeding)
            Public intoxication

petty offense should be counted "unless three conditions are met: (1) the sentence imposed was less than a term of probation of one year or a term of imprisonment of 30 days; (2) the prior offense and the instant offense are not "similar;" and (3) the prior offense is one of those listed in § 4A1.2(c)(1) . . . or is "similar" to them." United States v. Martinez-Santos, 184 F.3d 196, 199 (2d Cir. 1999) (citations omitted). By contrast, under subsection 4A1.2(c)(2), a court should "never . . . count the offenses listed there . . . or offenses "similar" to them." Id.

The "goal of the similarity inquiry" is "to determine whether an unlisted offense [is] 'categorically more serious' than the [section 4A1.2(c)] Listed Offenses." Martinez-Santos, 184 F.3d at 201 (quoting United States v. Caputo, 978 F.2d 972, 977 (7th Cir. 1992)). In assessing an unlisted offense's categorical similarity to one of the section 4A1.2(c) listed offenses, a "common sense approach which relies on all possible factors of similarity" is warranted. United States v. Morales, 239 F.3d 113, 118 (2d Cir. 2000) (quoting Martinez-Santos, 184 F.3d at 200). This may include, among other considerations:

> [1] a comparison of punishments imposed for the listed and unlisted offenses, [2] the perceived seriousness of the offense as indicated by the level of punishment, [3] the elements of the offense, [4] the level of culpability involved, and [5] the degree to which the commission of the offense indicates a likelihood of recurring criminal conduct.

Id. (quoting Martinez-Santos, 184 F.3d at 200).

These factors need not be applied "verbatim" or "in some robotic fashion." United States v. Sanders, 205 F.3d 549, 553 (2d Cir. 2000). But, a court applying this standard "should focus on the particular facts of the prior offense whenever the statute that was violated covers a broad range of conduct." Morales, 239 F.2d at 118 (discussing how second-degree harassment "can be committed in a variety of ways, and not all the conduct covered by the statute is more serious

---

Vagrancy.

7

than the Listed Offenses."). Typically, examination of the circumstances of the prior offense as outlined in the pre-sentence report suffices, but to the extent the Government seeks additional criminal history points for an offense that seems minor, "it has the burden to amplify the record." Id. (citing United States v. Kemp, 938 F.2d 1020, 1025 (9th Cir. 1991)).

Here, Santiago contends that counsel should have presented a meritorious 4A1.2(c)(1) argument regarding his 2004 conviction for criminal sale of marijuana, and has submitted further documentation pertaining to that conviction. Specifically, he has submitted an affidavit from an individual, Yeison Castillo, who it appears was a co-defendant in that case, averring that, on the evening of the 2004 offense, he was standing on a street corner when Santiago approached him and they greeted each other. Memorandum of Law in Support of Motion to Vacate Ex. A, 16-cv-05405, ECF No. 7. Immediately after that, a man approached Castillo and Castillo sold him a $10 bag of marijuana. Id. Castillo and Santiago then stood on the corner talking for about 10 minutes, after which two men came up to them, identified themselves as police officers, and arrested Castillo and Santiago. Id. They were detained approximately 17 hours before they saw a judge and were released on their own recognizance. Id.

Santiago has also submitted a copy of the criminal complaint in the 2004 case, charging him and Castillo,[3] which reflects, in relevant part, that an undercover officer approached Castillo and asked to buy a bag of marijuana. Memorandum of Law in Support of Motion to Vacate Ex. B, 16-cv-05405, ECF No. 7. Castillo then left the location and Santiago approached the undercover and told him to wait in the store. Id. The undercover observed Santiago go to the

---

[3] Throughout the copy of the criminal complaint that is appended to Santiago's papers, the codefendant's name is redacted. However, based on the Castillo affidavit and the arguments now presented, the Court assumes for the purposes of this motion that the codefendant is Castillo.

8

corner and look up and down the block, after which Castillo returned and handed the undercover a bag of marijuana in exchange for U.S. currency. Id.

Santiago has also included a copy of his Certificate of Disposition from the 2004 case, indicating that, on April 20, 2004, he was convicted of fourth-degree criminal sale of marijuana (N.Y. Penal Law § 221.40), and received a sentence of time served with a six-month driver's license suspension. Santiago has also submitted sworn statements from Mr. Ginsberg attesting, among other things, that he did not investigate the prior state conviction by obtaining sentencing minutes or court documents after he determined that it was properly counted as part of Santiago's criminal history because it occurred within the ten year period used for calculating criminal history points. See Affirmation of Lee Ginsberg ¶¶ 4-7, 16-cv-05405, ECF No. 15 Ex. B; Declaration of Lee A. Ginsberg ¶ 1, 16-cv-05405, ECF No. 27.

Santiago argues that these materials bring to light that his 2004 conviction was, in fact, similar to loitering and/or disorderly conduct (enumerated offenses under section 4A1.2(c)). He argues that, had counsel adequately investigated this conviction and obtained these materials, he would have presented a viable challenge to Mr. Santiago's criminal history category.[4] Because the Court disagrees that such a challenge was viable in the first instance, the Court rejects Santiago's claim of ineffective assistance.

---

[4] Disorderly conduct falls under subsection (1) of the statute, requiring the Martinez-Santos three-prong inquiry, while loitering falls under subsection (2) of the statute, requiring only an inquiry as to similarity with an enumerated offense. However, the parties only appear to dispute whether the 2004 conviction is similar to an enumerated offense. Thus, the Court's analysis assumes for the sake of argument that Petitioner has satisfied the other two prongs of the Martinez-Santos test (with respect to the disorderly conduct argument), although it notes that the 2004 conviction appears to be similar to the instant offense, as they both pertain to involvement in a narcotics enterprise. See United States v. Marte, No. 08-CR-1131 (DC), 2013 WL 12328696, at *7 (S.D.N.Y. July 22, 2013) (noting that criminal diversion of prescription medication is "arguably 'similar'" to conspiracy to distribute oxycodone) (quoting Martinez-Santos, 184 F.3d at 199); cf. Martinez-Santos, 184 F.3d at 198-199 & n.3 (noting that illegal reentry and fare beating/ticket scalping bear "little similarity").

Even assuming for the sake of argument that the fourth-degree criminal sale statute encompasses a broad enough range of conduct to warrant a Morales-type analysis, upon due consideration of the Morales factors, and all other relevant considerations, it is clear that Santiago's marijuana sale conviction was properly included in his criminal history score. As an initial matter, Petitioner cites no case reaching the conclusion that a marijuana possession offense, let alone a conviction for marijuana sale, is "similar to" loitering or disorderly conduct. The cases that have touched upon this question all suggest to the contrary. See, e.g., United States v. Muse, 311 F. App'x 394, 397 (2d Cir. 2009) ("Although offenses 'similar to' the offenses listed in § 4A1.2(c)(1), 'by whatever name they are known,' are also excluded, we conclude that marijuana possession is not a 'similar' offense. The elements of unlawful drug possession are not similar to a minor traffic infraction, or any other excepted offense." (emphasis added)); see also, e.g., United States v. Foote, 705 F.3d 305, 308 (8th Cir. 2013) (noting that "[n]o circuit has held that possession of marijuana (or other drugs) is similar to any of the Guidelines' enumerated exceptions" and surveying cases). Though Petitioner argues, in essence, that neither Muse, nor any of the Government's other cases, have conducted the analysis required by Morales, a reasonable application of the Morales factors, as well as any other considerations that might be relevant to determining similarity, does not dictate a contrary outcome.

Here, disorderly conduct (N.Y. Penal Law § 240.20) is a violation and first-degree loitering (N.Y. Penal Law § 240.36) is a class B misdemeanor, while fourth-degree criminal sale is a class A misdemeanor. Accordingly, a conviction under criminal sale statute may result in greater punishment than a conviction of the listed offenses in question, and is therefore more serious. Compare N.Y. Penal Law § 70.15(1) (providing that, for class A misdemeanor, sentence of imprisonment shall not exceed one year), with id. § 70.15(2) (providing that, for class B

10

misdemeanor, sentence of imprisonment shall not exceed three months). The elements of the criminal sale statute bear no similarity to the elements of disorderly conduct or the first-degree loitering statute.[5]

In addition, the level of culpability involved with criminal sale is greater than that involved with disorderly conduct or first-degree loitering, and that is only confirmed by examination of the offense conduct of this particular case. See Martinez-Santos, 184 F.3d at 205 (emphasizing that "the actual conduct engaged in by the defendant may often prove determinative for a district court in its similarity analysis"). Here, Santiago was more than simply present while his acquaintance conducted a drug sale, but was observed acting as a lookout for a drug sale. Santiago ostensibly acted to further the activities of a drug enterprise, which is categorically more culpable than standing on a street corner causing public inconvenience, or intending to personally use a controlled substance.

Petitioner attempts to minimize this conduct by arguing that it is not clear that the criminal complaint's allegations would survive a facial sufficiency motion because the allegations fail to establish that he was acting in concert with his codefendant. See Petitioner's Supplemental Brief at 8-9, 16-cv-05405, ECF No. 26 (citing People v. Hatchett, 768 N.Y.S.2d 123, 124 (N.Y. Cty. Crim. Ct. 2003); People v. Ramirez, 980 N.Y.S.2d 277, 2013 WL 5496126 (N.Y. Cty. Crim. Ct. 2013)). Even assuming the likely outcome of a facial sufficiency motion

---

[5] Compare N.Y. Penal Law § 240.20 (providing that "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: 1. He engages in fighting or in violent, tumultuous or threatening behavior; or 2. He makes unreasonable noise; or 3. In a public place, he uses abusive or obscene language, or makes an obscene gesture; or 4. Without lawful authority, he disturbs any lawful assembly or meeting of persons; or 5. He obstructs vehicular or pedestrian traffic; or 6. He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or 7. He creates a hazardous or physically offensive condition by any act which serves no legitimate purpose.") and id. § 240.36 ("A person is guilty of loitering in the first degree when he loiters or remains in any place with one or more persons for the purpose of unlawfully using or possessing a controlled substance, as defined in section 220.00 of this chapter."), with id. § 220.41 ("A person is guilty of criminal sale of marihuana in the fourth degree when he knowingly and unlawfully sells marihuana . . . .").

has a meaningful bearing on the similarity analysis that the Court must conduct, this argument is unpersuasive.

Where defendants are charged under an acting in concert theory, the People "must establish that the defendant shared the intent or purpose of the principal actors." Hatchett, 768 N.Y.S.2d at 124 (citing People v. Kaplan, 556 N.E.2d 415 (1990)). "Integral to each inquiry is whether a defendant exhibited any calculated or direct behavior that purposefully affected or furthered the sale of the controlled substance." Id. (quoting People v. Bello, 705 N.E.2d 1209 (1998)). Mere presence at the scene of a drug sale is not enough. Id. (citing People v. Yarrell, 551 N.E.2d 1235 (1990)).

Thus, in Hatchett, for example, the accusatory instrument was insufficient because the "sole allegation . . . concerning the defendant's purported involvement with the sale [was] that he held open a door for an individual who then walked inside the building and purchased marijuana." 768 N.Y.S.2d at 125. Because this act, alone, could have been nothing "more than a courtesy to a stranger[,]" it alone could not suffice to demonstrate that the defendant's conduct "purposefully affected or furthered the sale." Id. (quoting Bello). Similarly, in Ramirez, the Court dismissed an accusatory instrument for failure to allege accomplice liability, where the instrument merely alleged that defendant "accept[ed] marihuana sale proceeds from a seller[.]" 2013 WL 5496126, at *4-5. This allegation did not convey that he had any awareness of the sale to the undercover officer that had just occurred – rather, he was just a "money man[,]" which the Court distinguished from a "lookout." Id. at *5-6.

Here, by contrast, the allegations, and Santiago's specific involvement, are more nuanced. A fair reading of the criminal complaint suggests that Santiago and Castillo actively coordinated and carried out a multi-step sequence of events together in an effort to safely

12

consummate the drug sale. After the undercover communicated his desire to purchase marijuana to Castillo, Santiago approached the undercover and told him to wait in the store. After giving this directive to the prospective buyer, Santiago then looked up and down the block, thus confirming that Castillo could complete the sale that then occurred. It reasonably appears that the <u>combination</u> of the allegations at issue cannot be confused for mere innocent conduct, but rather suffice to demonstrate that Santiago was acting in concert with Castillo as a lookout, thus providing reasonable cause to believe that he committed a fourth-degree criminal sale. See, e.g., People v. Marchena, 704 N.Y.S.2d 65 (N.Y. App. Div. 1st Dep't 2000) (concluding that allegations of asking undercover buyer what he needed, telling him to wait near building where drugs were then sold, and bringing seller back to buyer, all while remaining nearby during sale, were "ampl[y]" indicative of shared intent to sell drugs).

For these reasons, among others, the Court is amply persuaded that, even when considering Petitioner's actual conduct, his role was "categorically more serious" than the conduct involved with the listed offenses of section 4A1.2(c). Having personally observed defense counsel's zealous representation of Mr. Santiago in this case, I cannot conclude that his decision to emphasize the overstated nature of the 2004 conviction as part of his 3553(a) argument, as opposed to investigating, and then presenting, the meritless Guidelines-related argument that Santiago now asserts, was an objectively unreasonable one. See, e.g., Reyes v. United States, No. 07-CR-783 (WHP), 2013 WL 2111284, at *3 (S.D.N.Y. May 8, 2013) (concluding that counsel's decision to concentrate on 3553(a) factors, rather than present Guidelines-related objection, was objectively reasonable). Even had counsel investigated the 2004 conviction and been presented with the information that Santiago presents now, it would have been more prudent—especially in light of the extensive colloquy between the Court and

13

defense counsel regarding specific deterrence—to decline to present the Guidelines-related argument in favor of a 3553(a) argument, as the Guidelines argument would have prompted close scrutiny of the underlying facts of the 2004 case in a way that the 3553(a) argument does not require. Those underlying facts are not favorable to Santiago because, as discussed above, they reveal his involvement as a lookout in a drug sale.

In sum, because the Guidelines-related argument is unavailing, Santiago's claim of ineffective assistance for failing to raise it fails on both prongs of the Strickland test. United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999), disapproved on other grounds, Scheidler v. Nat'l Org. for Women, Inc., 537 U.S. 393, 403 n.8 (2003) ("Failure to make a meritless argument does not amount to ineffective assistance."); see, e.g., United States v. Pitts, No. 3:12CV1081 EBB, 2014 WL 111824, at *3 (D. Conn. Jan. 10, 2014) (concluding that because "there was no error in awarding [Petitioner] three criminal history points for his 2002 narcotics conviction under U.S.S.G. § 4A1.2(d)(1)[,]" defense "counsel's performance in failing to raise the meritless challenge to his criminal history calculation did not fall below an objective standard of reasonableness and [Petitioner] could not have, and did not, suffer any prejudice.").

## CONCLUSION

For the foregoing reasons, the Court rejects Santiago's claim of ineffective assistance of counsel. His section 2255 petition is, accordingly, **DENIED**. Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253.

The Clerk of Court is directed to terminate any pending motions, enter judgment, and close the case.

**SO ORDERED.**

**Dated: September 17, 2018**
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**